IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 10, 2021 Session

## STATE OF TENNESSEE v. PAUL D. PAGE

**Appeal from the Criminal Court for Clay County**
**No. 2019-CR-16     Gary McKenzie, Judge**

_____

### No. M2020-01096-CCA-R3-CD

_____

The defendant, Paul D. Page, pleaded guilty to two counts of sale of 0.5 grams or less of methamphetamine, and the trial court imposed an effective sentence of nine years' incarceration in the Tennessee Department of Correction. On appeal, the defendant argues the trial court erred in denying his request to serve his sentence on probation. After reviewing the record and considering the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Brian D. Wilson, Assistant Public Defender, Tennessee District Public Defenders Conference (on appeal) and Craig P. Fickling, District Public Defender, and Tyler Lannom and Chasity Hancock, Assistant Public Defenders (at guilty plea and sentencing hearings), for the appellant, Paul D. Page.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Mark Gore, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### *Facts and Procedural History*

## I.     Guilty Plea

On August 29, 2019, the defendant pleaded guilty to two counts for the sale of 0.5 grams or less of methamphetamine (counts one and three).[1] As part of the plea agreement, the defendant agreed to serve a three-year sentence in incarceration for count one consecutively to a six-year sentence for count 3, with the manner of service for the six-year sentence to be determined by the trial court.[2] The facts underlying the plea, as explained by the State, were as follows:

> [T]he defendant, on two separate occasions, on [December 16, 2018 and February 4, 2019,] sold and delivered methamphetamine to a confidential source that was working for Sergeant Cain with the Clay County Sheriff's Department.
>
> On each occasion, Sergeant Cain would utilize recording equipment, audio and video recording equipment, and that equipment captured the details and the events of the drug transaction, or the controlled transaction that [the defendant] was involved in. On each occasion, [the defendant] sold and delivered the methamphetamine for a monetary value. And after the completion of the controlled transaction, the informant would return back to Sergeant Cain and hand over the methamphetamine. At which point, Sergeant Cain sent that to the TBI. And on each occasion, the amount that the TBI tested indicated that it was over half a gram, again on each occasion. The drug deals also happened in Clay County.

## II.    Sentencing Hearing

During the sentencing hearing, the State introduced a copy of the defendant's presentence report and certified copies of the defendant's eight prior judgments of conviction. Cortney Gelinas with the Tennessee Department of Correction testified that she prepared the defendant's presentence report and recalled that the defendant asked for help with his drug problem several times during his interview.

The defendant testified on his own behalf. He stated that he quit school in the ninth grade and had not held a job since 2003. The defendant also admitted that he had a lengthy criminal history and had violated probation on prior occasions. The defendant began experimenting with drugs at eighteen or nineteen years old and continued using them throughout his life. However, the defendant's "whole perspective about getting high" changed for the worse when he tried methamphetamine while in prison.

---

[1] The defendant was also charged with two counts of delivery of 0.5 grams or more of methamphetamine (counts two and four), but those counts were dismissed as part of the plea agreement.
[2] The plea agreement was linked to a cooperation agreement between the defendant and the State.

The defendant requested that the trial court sentence him to probation and allow him to attend rehab for his drug addiction. The defendant testified he had been accepted into Buffalo Valley's treatment program but was unable to attend due to his pending sentencing hearing. The defendant admitted he had never completed a long-term drug program, but he did complete a month-long treatment program in the 1990s. The defendant testified that, despite his repeated probation violations, he would act differently this time because he was clean.

Following the defendant's testimony, the trial court reiterated that it was not bound to the terms of the plea agreement and that disagreements regarding whether the defendant had fulfilled the terms of a cooperation agreement were between the defendant and the State.[3] In sentencing the defendant, the trial court considered the evidence presented during the guilty plea and sentencing hearings, including the presentence report and the arguments of counsel. The trial court did not find any applicable enhancement or mitigating factors. After considering the facts and circumstances of the case, the trial court ordered the defendant to serve the six-year sentence for count three in confinement. Per the terms of the defendant's plea agreement, the trial court ordered the six-year sentence to be served consecutively to the three-year sentence for count one, for an effective sentence of nine years.

In considering alternative sentencing, the trial court reviewed the defendant's prior convictions and found, due to the defendant's long history of criminal conduct, confinement was necessary to protect society. The trial court also noted that the defendant had multiple violations of probation. According to the trial court, the defendant's "decades of convictions" proved he was not willing to take personal responsibility for his actions and, therefore, was not a proper candidate for rehabilitation. As a result, the trial court denied the defendant's request for probation and ordered him to serve his sentence in confinement. This timely appeal followed.

### *Analysis*

The defendant's sole issue on appeal is the trial court's denial of probation. Specifically, the defendant argues the trial court denied probation "without explicitly analyzing [the defendant's] amenability to correction or particular suitability to rehabilitation." The defendant also argues the trial court's reference to an unrelated sentencing hearing "constituted the use of facts outside of evidence." The State contends

---

[3] At the sentencing hearing, the defendant and Sergeant Anthony Cain testified regarding the terms of the cooperation agreement. However, they differed as to whether those terms were met.

the trial court acted within its discretion in ordering the defendant to serve his sentence in confinement. We agree with the State.

A trial court's decision to grant or deny probation is reviewed under an abuse of discretion standard with a presumption of reasonableness when the sentence reflects the purposes and principles of sentencing. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (order) (per curiam). The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* Tenn. Code Ann. § 40-35-303(b); *State v. Russell*, 773 S.W.2d 913, 915 (Tenn. 1989); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

Generally, probation is available to a defendant sentenced to ten years or less. Tenn. Code Ann. § 40-35-303(a). A defendant who is convicted as an especially mitigated or standard offender of a Class C, D, or E felony is considered a favorable candidate for probation. Tenn. Code Ann. § 40-35-102(6)(A). In determining whether incarceration is appropriate, the trial court should consider whether:

(A)    Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)    Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses;

(C)    Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1)(A)-(C). Additionally, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(4), (5).

Following the defendant's testimony, the trial court noted that it had considered the evidence presented at the sentencing hearing, the principles of sentencing, arguments as to sentencing alternatives, the characteristics of the criminal conduct to which the defendant

pleaded guilty, the defendant's testimony, the statistical information and risk and needs assessment, and the potential for rehabilitation and treatment.

The trial court examined the defendant's prior criminal history and found it was "extensive." The trial court also noted that the defendant had been on probation before and had "been violated many times." The trial court acknowledged that the defendant requested permission to attend rehab but found that the petitioner failed to take personal responsibility for his "decades of convictions." Ultimately, the trial court found "confinement [was] necessary to protect society" from the defendant and "measures less restrictive than confinement [had] frequently or recently been [unsuccessfully] applied" to the defendant.

We find no abuse of discretion in the trial court's denial of probation. As the trial court noted, the defendant had a history of committing similar drug offenses and had previously been granted probation, which he violated on several occasions. Although the defendant testified he was ready to attend rehab and get his "mind back right," the presentence report indicated that the defendant admitted to continually using cocaine, marijuana, and methamphetamines for decades. As evidenced by the record on appeal, the trial court thoroughly considered all of the evidence prior to denying probation and ordering incarceration, and the trial court stated its reasons for doing so.

The defendant specifically takes issue with the trial court's statement regarding an unrelated sentencing hearing that had occurred the previous day. While discussing the defendant's potential for rehabilitation, the trial court made the following statements:

As to rehabilitation, you know, it's not – this isn't – look, at sentencing hearings, we have those individuals who are first time offenders, or first felony, second felony maybe in their arc of their criminal behavior. And those individuals are individuals who are well suited for the possibility of rehabilitation. When we have some criminal behavior from the eighties, all the way through the fifties – I mean, all the way through an individual who's fifty years old, and we have multiple criminal history like that, there is only one individual who is to blame for that behavior. And that's the man sitting right down there in orange.

This [c]ourt – listen, I don't have a problem with granting grace to individuals who are beginning and asking for help. But there needs to be – and if we can't – and if we can't decide the difference between those two . . . . It's easy for me to decide. The sentencing hearing I had yesterday is not the individual that's in front of me today. It's very easy for me to distinguish between an individual who only has one conviction and then one who has

- 5 -

decades of convictions. Those are very easy. And this [c]ourt believes in personal responsibility, which at some point somebody's got to take, and so the rest of it is just noise.

Although the defendant contends that the trial court's reference to an unrelated defendant "show[ed] that the trial court's reasoning was based on its own approach for 'granting grace' . . . and not on the sentencing statutes," when viewed in the context of the trial court's complete oral findings, the brief reference to an unrelated case was used to illustrate how the trial court analyzed a defendant's criminal history and willingness to accept responsibility in determining the potential for rehabilitation. The trial court's comments indicate a concern with the defendant's likelihood to re-offend and potential for rehabilitation. As previously discussed, the trial court's denial of probation and imposition of incarceration is entitled to a presumption of correctness absent an abuse of discretion. Accordingly, we affirm the trial court's denial of probation, and the defendant is not entitled to relief.

## *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE